UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

NANETTE M. IGLINSKY

VERSUS

JEFFERY PLAYER, ET AL.

CIVIL ACTION

NO. 08-650-BAJ-CN

## RULING ON MOTIONS IN LIMINE AND MOTIONS FOR SUMMARY JUDGEMENT

For reasons set forth in the Report and Recommendation (doc. 64) of the Magistrate Judge, and for additional reasons set forth herein, defendants' motions in limine (docs. 30 and 32) are granted in part and denied in part. For reasons set forth herein, the motions for summary judgment filed by defendant Jeffery Player ("Player") (doc. 29), Teacher's Insurance Company ("Teachers") (doc. 33) and defendants HealthTek Solutions, Inc. and Federal Insurance Company ("Federal") (docs. 27 and 28) are denied.

### MOTIONS IN LIMINE

The Court adopts the Report and Recommendation of the Magistrate Judge with respect to the motions in limine by defendants Player and Teachers, with the exception of the portion of the Report and Recommendation that refers to the limited field experience of Trooper Rohn Bordelon. The Court does not challenge Trooper Bordelon's ability and training, and does not consider the extent of Trooper Bordelon's experience to be a factor in its decision to exclude the accident report as

1

admissible evidence.

## SUMMARY JUDGMENT

The purpose of summary judgment is to pierce pleadings and to assess proof in order to determine whether there is a genuine need for trial. *R.J. Reynolds Tobacco Co. v. Hudson*, 314 F.2d 776, 788 (5th Cir. 1963). In considering a motion for summary judgment, the court must construe all pleadings liberally in favor of the party against whom the motion is made, and the motion should be granted only where the moving party is entitled to judgment as a matter of law and the record clearly shows that no genuine issue of material fact exists. *Dassinger v. South Central Bell Tel. Co.*, 505 F.2d 672, 674 (5th Cir. 1974). The party seeking summary judgment bears the burden of showing that there is no material fact in dispute, and every reasonable inference arising from the record must be resolved in favor of the party opposing the motion. *Hodges v. Exxon Corp.*, 727 F.2d 450, 452 (5th Cir. 1984). A fact is material if it might affect the outcome of the suit under the governing law. *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001). There is a genuine issue as to a material fact if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.*

## BACKGROUND

The instant case arises from a single-vehicle automobile accident which occurred on September 11, 2007 at approximately 11:00 p.m. on Interstate 10 in Ascension Parish, Louisiana. Defendant Player, the driver of the vehicle, and

plaintiff, Nanette Iglinsky, the vehicle's sole passenger, attended a baseball game together in New Orleans and were in route back to Baton Rouge. The vehicle operated by Player swerved off the roadway and collided with a tree, causing injuries to Player and to plaintiff. At the time of the accident, defendant Player was employed by HealthTek as an IT consultant, and was assigned to work on site at Our Lady of the Lake Regional Medical Center ("Our Lady of the Lake"), a hospital in Baton Rouge, LA. At the time of the accident, plaintiff was an employee of Our Lady of the Lake. The vehicle which Player operated at the time of the accident was rented under HealthTek's corporate account with National Rental Car Agency. Plaintiff has filed suit against Player, Healthtek, and Federal, claiming negligence by Player as the proximate cause of the accident. Jurisdiction is based on diversity of citizenship, 28 U.S.C. §1332.

## LAW AND ARGUMENT

### I. Course and Scope of Employment

Defendants HealthTek Solutions, Inc., and Federal Insurance Company, collectively referred to as "HealthTek," move for summary judgment on the basis that Player was not acting within the course and scope of his employment when the automobile accident occurred, negating vicarious liability on the part of HealthTek, and any coverage by HealthTek's insurer, Federal Insurance. Both Player and his insurer, Teachers, have filed oppositions to defendants' motion for summary judgment, asserting that Player was acting in the course and scope of his

employment with HealthTek at the time of the accident, because the trip to New Orleans was for a business-related purpose, specifically, client development.

The principle of vicarious liability in Louisiana law is codified in Civil Code article 2320, which provides, in pertinent part:

> Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.

"Vicarious liability rests in a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities." *Richard v. Hall*, 2003-1488 (La. 4/23/04), 874 So.2d 131, 138. An employer's vicarious liability for conduct which is not his own extends only to the employee's tortious conduct which is within the course and scope of employment. *Kelly v. Dyson*, 10-61 (La.App. 5 Cir. 5/25/10), 40 So.3d 1100, 1105. The "course" of course and scope refers to the time and place that the conduct occurred, while "scope" examines the employment-related risk of injury. *Baumeister v. Plunkett*, 95-2270 (La. 5/21/96), 673 So.2d 994, 996.

An analysis of course and scope of employment depends on the facts and circumstances of each particular case. *Williams v. Markel Lumber Co.*, 566 So.2d 446, 450 (4th Cir. 7/31/90); *Dickerson v. Piccadilly Restaurants, Inc.*, 1999-2633 (La.App. 1 Cir. 12/22/00), 785 So.2d 842, 845. The inquiry requires the trier of fact to determine whether the employee's tortious conduct was "so closely connected in time, place and causation to his employment-duties as to be regarded a risk of harm

4

fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests." *Russell v. Noullet*, 1998-0816 (La. 12/1/98), 721 So.2d 868, 870. The issue of course and scope of employment presents a mixed question of law and fact. *Id.* at 871.

In the case of *LeBrane v. Lewis*, 292 So.2d 216 (La. 1974), the Louisiana Supreme Court applied four factors in concluding that an employee's tortious conduct was within the course and scope of his employment, thereby rendering the employer vicariously liable for its employee's actions. Theses factors are: whether the tortious act was primarily employment-rooted; whether the act was reasonably incidental to the performance of the employee's duties; whether the act occurred on the employer's premises; and whether the act occurred during the hours of employment. *Id.* at 218.

A presumption exists in Louisiana jurisprudence that an employee who is involved in an automobile accident while operating his employer's vehicle is within the course and scope of his employment. *Fackrell v. Gulley*, 246 So.2d 386 (La. App. 1 Cir. 3/15/71); *Windham v. Security Ins. Co. of Hartford*, 337 So.2d 577 (La. App. 4th Cir. 1976); *Savoy v. Harris*, 2009-0221 (La.App. 1 Cir. 6/12/09), 20 So.3d 1075, 1079; *Young v. Mooney*, 2001-1592 (La.App. 3 Cir. 5/1/02), 815 So.2d 1107, 1111. This presumption may be rebutted by clear and convincing evidence. *Savoy, supra*. In addition to operating an employer's vehicle, employees have also been

found to be within the course and scope of employment when the employer provides expenses or wages for the time spent traveling in the vehicle, or if the operation of the vehicle is incidental to or is actually the performance of some employment responsibility. *Mooney, supra*; *Brooks v. Guerro*, 02-379 (La.App. 5 Cir. 10/29/02), 831 So.2d 424, 428, citing *Keith v. Gelco Corp.*, 30,022 (La.App. 2 Cir. 12/10/97), 705 So.2d 244.

HealthTek contends that Player was not in the course and scope of his employment during the excursion to New Orleans to attend the baseball game, but rather that the outing was purely personal in nature, with no employment-related purpose. In support of its contention, HealthTek notes that the trip occurred after working hours, without Healthtek's knowledge and consent, and that the baseball game occurred 50 miles away from Player's assigned work site in Baton Rouge. Further, HealthTek points to Player's deposition testimony, stating that he could not remember whether any business matters were discussed during the trip.[1]

Applying Louisiana law on course and scope of employment to the facts of the present case, a presumption exists that Player was acting within the course and scope of his employment. It is undisputed that the accident occurred while Player was operating a vehicle rented from National Car Rental Agency on HealthTek's corporate account.[2] In his deposition testimony, Player indicated that he would have

---

[1] Deposition of Jeffrey Player, p. 25, line 20 - p. 26, line 1.

[2] HeathTek Solutions, Inc's Responses to Requests for Admissions Propounded by Teacher's

been reimbursed for gas mileage throughout the trip, including the miles for travel to and from New Orleans.[3] Player further testified that he used the flat rate per diem payment to cover the cost of his ticket at the baseball game.[4] The fact that Player was operating a vehicle rented to HeathTek at the time of the accident, coupled with the fact that his employer paid or reimbursed expenses related to the trip to New Orleans, creates a presumption that Player was, in fact, in the course and scope of employment at the time of the accident. *See, Mooney; Brooks, supra.*

HealthTek contends that application of the *LeBrane* factors leads to the conclusion that the principle of vicarious liability does not extend to cover Player's conduct and that Player was not in the course and scope of employment. We first address the latter of the four factors, as to which there is virtually no factual dispute. Regarding the third factor, whether the act occurred on the employer's premises, it is indisputable that the accident did not occur on HealthTek's premises. Considering the fourth factor, it is clear that the accident occurred outside of Player's regular working hours, although Player testified that he could have been called by the hospital at any time in the event of an emergency.[5]

As to the first and second *LeBrane* factors – whether the tortious act was

---

Insurance Company, p. 3, no. 4 (doc. 44, exhibit C).

[3] Player's Deposition, p. 73, lines 8-16; 20-22.

[4] Player's Deposition, p. 57, lines 11-15.

[5] Player's Deposition, p. 20, line 18 - p. 21, line 6.

7

primarily employment-rooted and whether the act was reasonably incidental to the performance of the employee's duties – HealthTek argues that it had no control over Player's decision to attend the ball game in New Orleans, did not have notice that Player would be attending the game, and could not derive any benefit from Player's attendance at the game with plaintiff, as plaintiff did not have the authority to make any decisions concerning the continuation of the client relationship with Our Lady of the Lake hospital. In short, HealthTek characterizes the trip to New Orleans as a purely social outing with no business purpose. HealthTek cites plaintiff's deposition testimony in support of its proposition.[6]

In opposition to HealthTek's motion for summary judgment, Player and Teachers submit that Player was in fact in the course and scope of his employment at the time of the accident because the purpose of the trip to New Orleans was client development. In his deposition testimony, Player stated that interactions with clients or employees of clients outside of the workplace were common.[7] Player testified that he was aware of no written policy by HealthTek on client development, and that he had received no training in such regard.[8] However, Player maintained that his initial contract with the client hospital, which he believed to be a three-month term, was

---

[6] In response to the question, "Okay. So it was just three friends, essentially, going to a baseball game?", plaintiff answered "Yes, sir." Plaintiff's Deposition, p. 73, lines 3-5.

[7] Player's Deposition, pp. 56-57

[8] Player's Deposition, p. 18, lines 9-11; p. 66, lines 18-23

extended several times due to Player having developed positive client relationships with plaintiff and other hospital employees.[9]

Considering the law on course and scope of employment, and the applicable presumptions, the Court finds that HealthTek cannot not overcome on summary judgment the presumption that Player was acting within in the course and scope of his employment while operating a vehicle rented on HealthTek's account. Furthermore, because the question of whether an employee acts within the course and scope of employment relies heavily on the facts and circumstances of each particular case, the Court finds that the determination of this issue should be addressed to the trier of fact.

## II.   Identifiable Deviation

In addition to various cases addressing course and scope of employment, HealthTek also cites the case of *Timmons v. Silman*, 1999-3264 (La. 5/16/00), 761 So.2d 507, in support of its motion for summary judgment. In *Timmons*, the Louisiana Supreme Court determined that when an employee is within the course and scope of employment, an identifiable deviation from a business trip for personal reasons can take the employee outside of the course and scope of his employment. *Id.* at 510. The non-exclusive factors listed by the Court to determine whether an identifiable deviation has occurred include: when and where, in relation to the business errand, the employee deviates from the employment-related errand and

---

[9] Player's Deposition, p. 69, lines 1-17.

9

commences with his personal errand; the temporal and spacial boundaries of the deviation; the nature of the employee's work; the additional risks created by the deviation; and the surrounding circumstances. *Id.* at 511.

HealthTek argues that the entire trip to New Orleans constitutes an identifiable deviation that took Player out of the course and scope of employment. In reference to the factors provided in *Timmons*, HealthTek submits that Player's trip to attend the baseball game in New Orleans took Player approximately fifty miles outside of the general vicinity of his authorized work site for a purely social event. HealthTek further submits that this trip created a substantial risk of harm because of the distance involved, coupled with the fact that Player admitted consuming one alcoholic beverage while in New Orleans, and because Player was forced to return to the work site at a very late hour.

*Timmons* involved an employee who used her personal vehicle to run an errand for her employer. After completing the employer's errand, the employee embarked on a personal errand. The Court noted that the employee in question "was clearly within the course and scope of her employment" while traveling to the post office for her employer's errand. *Id.* The disputed issue was whether the employee's subsequent trip to the bank for her personal business was a deviation which took the employee out of the course and scope of employment.

*Timmons* is distinguishable from the facts of the present case in two respects. First, in the matter presently before the Court, unlike in *Timmons*, the employee

10

(Player) was operating a vehicle rented on his employer's corporate account, rather than a personal vehicle. Therefore, the presumption concerning the use of an employer's vehicle that would otherwise be applied in this case is not applicable to the facts in *Timmons*. Secondly, the *Timmons* court noted that "in examining the when and where of a deviation, it is generally held that '[w]hen an employee deviates from the business route by taking a side-trip that is clearly identifiable as such, the employee is unquestionably beyond the course of employment while *going away from the business route and toward the personal objective*.'" *Id*. (emphasis in original) The Court in *Timmons* noted that the automobile accident in question occurred while the employee had completed the employer's errand and was embarking on the personal errand. Courts have distinguished this scenario from one where the employee has completed the personal mission and is returning to the business route. *See, Davis v. AMS Tube Corp.*, 2000-1311 (La.App. 1 Cir. 6/22/01), 801 So.2d 466.

Having determined that summary judgment cannot be granted on the issue of whether or not Player was in the course and scope of employment during the trip to New Orleans, this Court likewise cannot determine as a matter of law that the trip to New Orleans constituted an identifiable deviation from the course and scope of employment.

## III. Sudden Emergency Doctrine

HealthTek, Player, and Teachers each move for summary judgment on the

basis of their respective contentions that the accident was caused by a sudden emergency, precluding a finding of negligence on the part of Player.[10] It is on the basis of the sudden emergency doctrine that the Magistrate opined that Player's motion for summary judgment should be granted. Citing the deposition testimony of plaintiff, Player, and Trooper Bordelon, the Magistrate's opinion concludes that plaintiff "has not come up with any competent, summary judgment evidence indicating that the 'sudden emergency doctrine' is inapplicable to this case." Magistrate's Report and Recommendation, p. 17 (doc. 64).

The Magistrate's Report and Recommendation, as well as HealthTek's motion for summary judgment, cites the case of *Manno v. Gutierrez*, 2005-0476 (La.App. 1 Cir. 3/29/06), 934 So.2d 112. In *Manno*, the Court stated:

> We note first that the application of the sudden emergency doctrine requires factual determinations concerning whether the driver was confronted with imminent peril and whether there was sufficient time to consider and weigh the circumstances in order to take action to avoid an impending danger. While we cannot say that it would never be possible to apply the doctrine on a motion for summary judgment...by the nature of the sudden emergency doctrine, it would seem rarely appropriate on a motion for summary judgment.

*Id.* at 118. While the Louisiana First Circuit Court of Appeal noted that none

---

[10] The "sudden emergency doctrine" provides that "[o]ne who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence." *Hickman v. Southern Pacific Transport Company*, 262 So.2d 385, 389 (La. 1972).

of its cases have applied the sudden emergency doctrine on summary judgment, opinions from other Louisiana courts of appeal have done so. In the recent case of *Loyd v. Lancer Ins. Co.*, 43,859 (La.App. 2 Cir. 1/14/09), 999 So.2d 1232, the trial court ruled on summary judgment that a malfunctioning motorcycle being driven on a highway created a sudden emergency and that the evasive action taken by the defendant, which ultimately caused a collision with the plaintiff, was excused on the basis of the sudden emergency doctrine. The plaintiffs argued that the sudden emergency doctrine was improperly applied on summary judgment, because genuine issues of material fact remained concerning whether the defendant had sufficient time to react in a way which would not have caused the collision. In affirming the summary judgment, the Second Circuit Court of Appeal noted that where no facts are in dispute, summary judgment may be appropriate where a sudden emergency renders an accident unavoidable. *Id.* at 1234.

In support of its motion for summary judgment, HealthTek cites the case of *King v. Vico Ins. Co.*, 182 So.2d 135 (La.App. 4 Cir. 1/10/66). The *King* case involved a passenger plaintiff who sustained injuries after the driver of the vehicle which the plaintiff occupied brought the vehicle to a sudden stop after a dog appeared in the middle of the street. The Fourth Circuit Court of Appeal reversed the trial court's judgment in favor of the plaintiff, finding that the dog created a sudden emergency and that the defendant reacted normally under the circumstances. Concerning the facts of the case, the court noted that there was no

13

disagreement as to material facts at issue, stating, "We repeat that there is nothing whatever which tends to contradict the story of Miss Ray, the driver of the car." *Id.* at 136.[11]

The Court finds that there are material facts in dispute in the present case. Accordingly, the Court declines to grant summary judgment on the basis of the sudden emergency doctrine. Application of the sudden emergency doctrine on summary judgment may be appropriate in cases where the existence of an emergency situation is undisputed. However, in the instant matter, the Court agrees with the reasoning of the Louisiana First Circuit Court of Appeal in *Manno*. This case involves factual determinations concerning whether Player was confronted with a small animal in the roadway, which caused an imminent peril that necessitated Player's evasive maneuver. In denying summary judgment on this issue, the Court in no way renders an opinion as to the ultimate applicability of the sudden emergency doctrine to the merits of the case. The Court simply finds that the sudden emergency defense raises factual questions which should be addressed to the trier of fact.

---

[11] The plaintiff in the case also testified that she had seen the dog as well. *King* at 136.

## CONCLUSION

For the reasons stated above, the motions in limine filed by defendants, Jeffrey Player (doc. 30) and Teacher's Insurance Company (doc. 32), are hereby **GRANTED IN PART** and **DENIED IN PART**, in that any testimony of Trooper Rohn Bordelon and any portions of his accident report pertaining to the traffic citation for "careless operation" of a vehicle, his description of Player's condition as being "inattentive," and his opinions as to the cause of the accident are excluded.

It is further ordered for the reasons stated above that the motions for summary judgment filed by defendants, Healthteck Solutions, Inc. and Federal Insurance Company (docs. 27 and 28), Jeffrey Player (doc. 29), and Teacher's Insurance (doc. 33) are hereby **DENIED**.

Baton Rouge, Louisiana, November 23, 2010.

_____
BRIAN A. JACKSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA